IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DONALD BOLTON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| ROBINZINA BRYANT, as Chair of the Illinois Concealed Carry Licensing Review Board, and SERGIO ACOSTA, JAMES CAVANAUGH, PATRICK JOHN CHESLEY, JOHN DIWIK, G. PATRICK MURPHY, and VIRGINIA WRIGHT, as Members of the Illinois Concealed Carry Licensing Review Board; HIRAM GRAU, as Director of the Illinois State Police; and JESSICA TRAME, as Bureau Chief of Firearms Services, Illinois Police, | ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) ) |

**COMPLAINT**

NOW COMES Donald Bolton, the Plaintiff in the above-captioned case, by and through his attorneys, J. D. Obenberger and Associates, and complains against the Defendants, Robinzina Bryant, Sergio Acosta, James Cavanaugh, Patrick John Chesley, John Diwik, G. Patrick Murphy, and Virginia Wright, Hiram Grau, and Jessica Trame, as follows:

**Nature of the Case**

1.      This action seeks relief from the Defendants' denial of the Plaintiff's procedural due process rights and from the application by the Defendants against the Plaintiff of an unconstitutional prior restraint upon his rights to keep and bear arms, as guaranteed to him by the Constitution and laws of the United States. In particular, the State of Illinois purports to condition the

right of the Plaintiff and other law-abiding citizens to carry handguns outside of the home for the defense of the themselves and others on a license issued by the State of Illinois. The Defendants have denied the Plaintiff such a license without any prior notice of the substance of any objections to his application and without any opportunity to be heard. Moreover, the Defendants purport to limit the Plaintiff's right to judicial review of their license denial to procedures which are restricted to review of a closed administrative record. Under the Illinois licensing scheme challenged here, the Plaintiff was deprived of any opportunity to substantially influence the Defendants' decision on his application. Each Defendant is a part of the specific licensing process which currently denies the Plaintiff his right to keep and bear arms by carrying handguns for the purpose of defending himself and others against serious criminal aggression. Each of the Defendant members of the Illinois Concealed Carry Licensing Review Board could have, but did not, afforded the Plaintiff notice and an opportunity to be heard with respect to any objections to his license application. On this basis, said Defendants denied the Plaintiff a license, effectively leaving the Plaintiff with no opportunity ever to make an adequate record and thus to be effectively heard. As a direct result, the Defendants will treat the Plaintiff as a criminal if he exercises some of his critical Second Amendment rights.

2.      This action arises under the Second and Fourteenth Amendments to the United States Constitution, under Sections 1651, 2201, and 2202 of Title 28 of the United States Code, and under Sections 1983 and 1988 of Title 42 of the United States Code.

**Jurisdiction and Venue**

3.      This Court has jurisdiction over the subject matter of this action under Sections 1331 and 1343(a)(3) and (4) of Title 28 of the United States Code because this action arises under the Constitution and laws of the United States and because it is brought to redress the depri-

vation of the Plaintiff's constitutional rights and to secure equitable relief under a federal civil rights statute.

4.     Venue is proper in this District under Section 1391(b)(1) and (2) of Title 28 of the United States Code because a substantial part of the events and omissions giving rise to this action occurred within the Northern District of Illinois and because, on information and belief, the Defendants Bryant, Acosta, and Wright reside within the Northern District of Illinois and all Defendants reside within the State of Illinois.

## Parties

5.     The Plaintiff, Donald Bolton, is a citizen of the United States and of the State of Illinois. He is more than 21 years of age, and he has for many years resided in the City of Chicago with a current postal address of 8849 South Cregier, Chicago, Illinois 60617. At all times material, he has consistently held a Firearm Owner's Identification Card issued by the State of Illinois. In order to protect himself and his family from serious criminal aggression, he owns a handgun. On January 9, 2014, he applied for a license to carry a concealed handgun under the Illinois Firearm Concealed Carry Act. On March 19, 2014, Defendant Jessica Trame sent him and he thereafter received from her a letter indicating that the Illinois Department of State Police had received an objection to his application, that the Illinois Concealed Carry Licensing Review Board determined that he is not eligible for a Concealed Carry License—and that the Illinois Department of State Police therefore denied Bolton's application on that date. In addition, Plaintiff Bolton was, in January of 2014, certified to teach the training and education courses required of license applicants under the IFCCA. Such certification was valuable to Plaintiff Bolton because he conducted training and taught courses under it for profit; but he has now lost that certification as a sole result of the Defendants' denial of his own application under the IFCCA. Plaintiff

Bolton now sues to vindicate his personal right to keep and bear arms as well as his procedural due process rights, all as detailed more fully *infra*.

6.     The Illinois Concealed Carry Licensing Review Board ("ICCLRB") is an administrative agency of the State of Illinois created by Section 20 of the Illinois Firearm Concealed Carry Act. Under that Act, it is charged with hearing and determining objections filed by law enforcement agencies to the applications of individuals for licenses to carry concealed handguns under the Illinois Firearm Concealed Carry Act. The ICCLRB reviewed Plaintiff Bolton's application for the same and it determined that he is ineligible for such a license. Defendant Robinzina Bryant is the chairperson and Defendants Sergio Acosta, James Cavanaugh, Patrick John Chesley, John Diwik, G. Patrick Murphy, and Virginia Wright, are the members of the ICCLRB. Each is sued only under the principles articulated and recognized in *Ex parte Young*, 209 U.S. 123 (1908).

7.     The Illinois Department of State Police ("Department") is, for all material purposes, an administrative agency of the State of Illinois. Under the Illinois Firearm Concealed Carry Act, it is charged with administering the system for considering and for granting or denying individual applications for licenses to carry concealed handguns under the Illinois Firearm Concealed Carry Act. In connection with those duties, the Department, *inter alia*, issues either a license or a denial to each applicant for such a license. On March 19, 2014, the Department denied such a license to the Plaintiff Bolton upon the determination of the ICCLRB, as detailed more fully *infra*. The Defendant Hiram Grau is the Director of the Department, and the Defendant Jessica Trame is the Bureau Chief of Firearms Services for the Department. Each is sued only under the principles articulated and recognized in *Ex parte Young*, 209 U.S. 123 (1908).

**General Allegations**

8.    On December 11, 2012, the United States Court of Appeals for the Seventh Circuit invalidated potions of Illinois' unlawful use of weapons statutes on the grounds that the right to keep and bear arms, as secured to individuals by the Second and Fourteenth Amendments to the United States Constitution, includes the right to carry handguns outside the home for the purpose of defense of self and others from serious criminal aggression. *Moore v. Madigan*, 702 F.3d 933, 942 (7th Cir. 2012). Self-defense is the central component of the Second Amendment's right to keep and bear arms, and the need to use a firearm in self-defense "is as important outside the home as inside." *Id*. at 942; *see also People v. Aguilar*, 2013 IL 112116. In response, the Illinois General Assembly enacted the Illinois Firearm Concealed Carry Act ("IFCCA") on June 5, 2013. The Governor vetoed that Act, but the General Assembly overrode that veto; and the IFCCA took effect as Public Act 98-63 on July 9, 2013. Under Section 10(c) of the IFCCA, 430 ILCS 66/10(c), the Defendants purport to require that law-abiding citizens obtain a license from the State of Illinois prior to exercising their rights under the Second Amendment by carrying a loaded or unloaded handgun, fully concealed or mostly concealed, on or about their persons outside of their homes or fixed places of business or by keeping or carrying a loaded or unloaded concealed handgun on or about their persons within a vehicle. The licensing provisions of this enactment are challenged here.

9.    The IFCCA prescribes the exclusive method for applying for the license described in paragraph 8 of this complaint, for considering and for granting or denying individual applications for such licenses, and for issuing, denying, renewing, and revoking such licenses. Under Section 10, 430 ILCS 66/10, the Department is responsible for prescribing the form of the application, for receiving all such applications, and for posting certain information about each applicant to a database accessible by certain law enforcement officials. Unless an objection is filed by

a law enforcement agency under Section 15, 430 ILCS 66/15, the Department is required to issue or deny a license to an applicant within 90 days of receiving his or her completed application accompanied by fingerprint access information, with certain exceptions not relevant here but which are detailed below. In particular, Section 25, 430 ILCS 66/25, unconditionally requires the Department to issue a license to an applicant who is at least 21 years old, is eligible for and holds a valid Firearm Owner's Identification Card, is not prohibited by applicable law from possessing or receiving a handgun, is not accused of and has not recently been convicted of certain specified criminal offenses, has not recently been in certain drug or alcohol treatment programs, and has completed the required firearms training.

10.     The IFCCA expressly authorizes (and, in some situations not relevant here, requires) law enforcement agencies to object formally to individual license applications on reasonable suspicion that the applicant is a danger to himself or others or a threat to public safety. Section 15, 430 ILCS 66/15, requires that such objections be made by the chief law enforcement officer of the law enforcement agency or by his or her designee. Such an objection, if timely, tolls the 90-day period for Department action on a license application until such time as the ICCLRB issues its decision on an objection. Under Section 20, 430 ILCS 66/20, the ICCLRB may take up to 60 additional days to consider an application, and even longer if waiting for information from the applicant or otherwise if the applicant agrees. The ICCLRB may—but is not required to—request additional information from the objecting law enforcement agency, from the Department, or from the applicant; and, in reaching its decision, it may consider only such information along with the information supporting the formal objection. If the ICCLRB decides, by majority vote and on a preponderance of the evidence, that the applicant is a danger to himself or others or a threat to public safety, then the Defendant Department is required to deny the applicant a license

and inform the applicant of his or her right to review. 430 ILCS 66/10(f), 20(g). Otherwise, the Department must process the application under Sections 10 and 25. 430 ILCS 66/15(d).

### Common Allegations

11.     Like many law-abiding citizens, Plaintiff Bolton is reasonably concerned about his personal safety and the safety of his family members.  He lives, works, and travels in a densely populated metropolitan area with high rates of crime, including robbery and murder. For these reasons, *inter alia*, Plaintiff Bolton owns a handgun. The State of Illinois issued to him a Firearms Owner Identification ("FOID") Card,  Number 32840181; and that card is not suspended, revoked, or otherwise inoperative by operation of law or by any other means. It remains in full force and effect. On January 9, 2014, he applied for a license to carry a concealed handgun under the Illinois Firearm Concealed Carry Act. Using the procedures and forms prescribed by the Department, he submitted an online application, uploaded his photograph, uploaded a copy of a certificate establishing his prior training required by the IFCCA, provided access to fingerprint information, fully and truthfully provided all other required information, and duly paid the required application fee of $150.00. On information and belief, his application was complete on January 9, of 2014.

12.     At the time of his application, and at all times material, Plaintiff Bolton is and has been at least 21 years old. He holds and is and at all material times has been eligible to hold a Firearm Owner's Identification Card issued by the Department. He is not prohibited from possessing or receiving a firearm under the Illinois Firearm Owner's Identification Card Act or under federal law. He has not been convicted, within 5 years preceding his application of any misdemeanor involving the use or threat of physical force to any person nor of two or more violations concerning driving under the influence of alcohol or drugs. He is not the subject of any ar-

rest warrant, prosecution, of other proceeding for an offense or action which could lead to his disqualification to own or possess a firearm. He is not and has not within 5 years immediately preceding his application been in residential or court-ordered treatment for alcoholism, alcohol detoxification, or drug treatment. And he has completed firearms training and any education component required under the IFCCA. Apart from any law enforcement agency objection authorized under Section 15, 430 ILCS 66/15, Plaintiff Bolton qualifies for a license under the IFCCA, and the Department is required to issue the same to him. 430 ILCS 66/10(a), 25.

13.     On information and belief, in January or early February of 2014, Garry McCarthy —acting for the City of Chicago either personally or through a designee whom he authorized— formally objected to Plaintiff Bolton's application for a license under the IFCCA. For the all of the reasons detailed in paragraph 12 of this complaint, but for this law enforcement objection, Plaintiff Bolton met and meets all of the IFFCA's licensing requirements; and he is not otherwise debarred by federal or Illinois state law from possessing, carrying, or using any firearms of the classes that are generally lawful to ordinary citizens.

14.     On or before March 19, 2014, the ICCLRB considered the objection to Plaintiff Bolton's application for a license under the IFCCA. It never requested any information or comment from Plaintiff Bolton concerning the objection or the information supporting it. It never afforded Plaintiff Bolton a reasonable opportunity to be heard and to make a record concerning any questions of fact or of law raised by the objection pending before it. Nevertheless, it determined that Plaintiff Bolton is ineligible for a license under the IFCCA.

15.     Prior to the ICCLRB's determination specified in paragraph 14, Plaintiff Bolton knew nothing of the substance of any objection to his application. He received a letter dated March 19, 2014, from Defendant Trame indicating that the Department had received an objection

to his license application from a law enforcement agency. The letter also stated that the objection was submitted to the ICCLRB. It then stated that "The Board has notified the Department that it has determined by a preponderance of the evidence that you pose a danger to yourself or others/are a threat to public safety." It concluded: "Therefore, the Board has affirmed the objection and determined that you are not eligible for a Concealed Carry license. Your application for a Concealed Carry License is hereby denied." Cursory information concerning judicial review rights followed, but that inadequate information failed to inform Plaintiff Bolton that his exclusive remedy was an action under the Illinois Administrative Review Law or that his right to judicial review would expire 35 days after the final administrative decision on his application. Plaintiff Bolton now sues to vindicate his personal right to keep and bear arms secured to him by the Second Amendment to the United States Constitution, which applies to the Defendants through the Due Process Clause of the Fourteenth Amendment thereto. He contends that the law enforcement objection-and-review process provided for in Sections 15, 20, and 45 of the IFCCA amounts to an unconstitutional and void deprivation of his rights without due process of law as protected in the Fourteenth Amendment and also to an improper and void prior restraint upon his right to exercise the rights provided for in the Second Amendment, that these provisions of the Act cannot stand, that they should be declared unconstitutional and void, that this Court should enjoin the Defendants, and each of them, from the enforcement of their provisions, and that this Court should issue an order for the issuance of the license at the heart of this complaint to the Plaintiff. He also sues to redress the deprivation of his liberty without due process of law in violation of the Fourteenth Amendment to the United States Constitution. He asserts that the law in question directly affects many thousands, perhaps millions, of like-situated law-abiding citizens whose applications may be denied erroneously or whose applications for such a license are

chilled in the first place because of the outrageous and egregious power given law enforcement and the Board under the provisions at bar, and that its direct and unavoidable effect is to directly but wrongfully deny many thousands of these law-abiding their right to lawfully defend themselves outside the home.

### Count I—Procedural Due Process

16.    The Plaintiff reasserts the allegations contained in paragraphs 1 through 15 of this complaint as if fully restated in this count 1.

17.    The provisions of the IFCCA at issue in this litigation purport to condition the exercise of constitutionally protected rights upon the issuance of a license from the State of Illinois. In particular, said licensing provisions a) require individuals, such as Plaintiff Bolton, who wish to exercise some of their Second Amendment rights to apply for a license from the Department, b) require the Department to post information concerning each such application to a database available to law enforcement agencies, c) permit the ICCLRB and Defendants Bryant, Acosta, Cavanaugh, Chesley, Diwik, Murphy, and Wright to review such objections and to determine whether an applicant poses a danger to himself or herself or others or is a threat to public safety, and d) require the Department and Defendants Grau and Trame to deny and withhold a license under the IFCCA from an applicant upon an affirmative determination by the ICCLRB. After Plaintiff Bolton duly applied for a license under the IFCCA, a formal objection was filed to his eligibility. Thereafter ICCLRB and Defendants Bryant, Acosta, Cavanaugh, Chesley, Diwik, Murphy, and Wright considered that objection under the circumstances detailed in paragraph 14 of this complaint, and they determined that Plaintiff Bolton is ineligible for licensure only for the reasons asserted in paragraph 15 of this complaint. The Department and Defendants Grau and

Trame thereupon denied and withheld from Plaintiff Bolton a license under the IFCCA. They continue to do so.

18.     The process which the Defendants afforded to Plaintiff Bolton in denying him a license under the IFCCA to exercise some of his expressly protected constitutional rights fell far short of that which was and is constitutionally due to him under the circumstances. *Cf. Matthews v. Eldridge*, 424 U.S. 319 (1976).

a.     Bolton's private interest in the matter is an individual right textually guaranteed to law-abiding citizens, such as him, by the Second Amendment to the United States Constitution, which applies to the Defendants through the Fourteenth Amendment thereto. No higher private interest is known to the law.

b.     Given the complexity of matters raised by the question of whether an individual poses a danger to self or others or is a threat to public safety, the risk of an erroneous deprivation of the constitutional right through a process depriving an applicant of notice of an objection and of any opportunity whatsoever to be heard with respect to that objection or on factual the underlying allegations is enormous. Non-adversarial review of the sort of information upon which the ICCLRB may rely under Section 20 of the IFCCA, 430 ILCS 66/20, falls far short of what is constitutionally required in other cases where the exercise of fundamental, constitutionally protected liberties turns on similar determinations. Given their statutorily required background experience, most of the ICCLRB members are likely to require the assistance of one or more expert witnesses (who cannot themselves serve on the ICCLRB) in order to assess the information contained in, for instance, medical records.

c.     A requirement of notice of an objection and an opportunity to be heard with respect to the factual allegations supporting the same and to make an administrative record con-

cerning these matters will vastly improve administrative decision-making of the type called for when a law enforcement objection is asserted to an application for a license under the IFCCA. Had he been notified that the ICCLRB was considering an objection to his application, Plaintiff Bolton could have presented to the ICCLRB any expertise and balance necessary for a full and fair adjudication of the law enforcement objection. Indeed, such procedures are already constitutionally required when the law calls for similar determinations concerning constitutionally protected individual rights. Instead, the Defendants used procedures which assured that he would possess no right or opportunity to do so before, during, or after an objection was filed concerning his application. Under the unconstitutional scheme enacted and here challenged, neither the Plaintiff nor anyone in his position as an applicant has any procedural right to establish to any decision-maker that misidentification or misnomer in a bureaucratic investigation or under a law enforcement objection has confused him with another person to his prejudice, that any allegation made against him which arises from investigation or objection is untrue, or otherwise to refute any evidence to his prejudice that may be considered by the Board or even to offer argument about the subject,  Under such circumstances, the increased burden of this simple, standard, additional procedure is more than offset by the increase they bring to accurate determinations.

      d.      The government's interest is always best vindicated by properly permitting the full exercise of individual constitutional rights.

The IFCCA provisions constituting the ICCLRB and requiring specific background experience of its members (a majority—3 members with substantial law enforcement experience, 2 former government attorneys) provide for no balance (*e.g.* crime victims rights advocates or counselors, experienced criminal defense attorneys, or state trial court judges with experience in trying criminal assault cases) on the ICCLRB, but rather tend toward bias; and there is no indication that the

aforementioned Defendants sought any balancing testimony or evidence in reviewing Plaintiff Bolton's application. The Defendants' deprivation of Plaintiff Bolton's right to timely notice of an objection to his application, of his right to be made aware of the specific allegations allegedly supporting any objection, of his right to dispute evidence and to present his own favorable evidence and argument, and of his right to a clear, unambiguous, and binding legal standard for the determination of the issue, all present an unconstitutionally unacceptable risk of poor and inaccurate decision-making, and they thus grossly endanger the exercise of a fundamental, constitutionally protected right.

19.    All of the matters asserted in paragraph 14 of this complaint and paragraph 17 of this count are particularly egregious in light of the IFCCA's ineffectual provisions concerning judicial review of administrative license denials based upon law enforcement objections. Many of the foregoing matters might be substantially mitigated if license applicants were entitled to meaningful notice and opportunity to be heard at some timely stage of the licensing process. In fact, Section 20 of the Act, dealing with the duties and functions of the Board,  refers twice to the conduct of the Board as a "review" of the objection and the materials submitted as it declines to provide the applicant with any right to challenge that objection or its supporting materials at a hearing; it guarantees that no applicant will ever possess a right to a hearing. In contrast, in the closely related case someone who is denied a Firearm Owner's Identification Card because he "poses a clear and present danger to [himself], and other person or persons or the community," 430 ILCS 65/8(f), the legislature has provided applicants with a right to *de novo* judicial review of the unfavorable administrative decision, *id*. at 65/11(b). The fact that Illinois already provides such procedures to another class of individuals in a similar context tends to establish a contrary legislative intent in the case of the Defendant and others situated like him who apply and have

applied for a Concealed Carry License: the Illinois legislature intends that such applicants enjoy no meaningful opportunity to refute objections and negative evidence adduced against them in the decision-making process. Sections 10(f), 20(g), and 87 of the IFCCA, 430 ILCS 66/10(f), 20(g), 87, and Section 1231.170 of Title 20 of the Illinois Administrative Code leave it unmistakably clear that the ICCLRB's determination on a law enforcement objection is final, that the Department and Defendants Grau and Trame are conclusively bound to act on it, and that a disappointed applicant's sole recourse after such a determination is review under the Illinois Administrative Review Law, as amended, 735 ILCS 5/3-101 through 3-113. That Law, however, makes it unmistakably clear that court review *is limited to the administrative record* and thereby cements the bricks composing the legislative wall that separates the Plaintiff and others situated like him from a fair and adequate process, necessary under our Constitution, before his fundamental right of armed self-defense outside the home can be taken from him by the State and its functionaries. The Illinois Administrative Review Law "specifically limits judicial review to the administrative record," and courts thus "may not hear new or additional evidence in support of, or in opposition to, the decision of the administrative agency." *Marconi v. Chicago Heights Police Pension Board*, 225 Ill. 2d 497, 532, 870 N.E.2d 273, 292 (2006); *see* 735 ILCS 5/3-110. Thus the denial to Plaintiff Bolton by Defendants Bryant, Acosta, Cavanaugh, Chesley, Diwik, Murphy, Wright, Grau, and Trame of notice and an opportunity to be heard did much more than merely delay Plaintiff Bolton's due process rights, it effectively prevented him from making a record which is necessary to meaningful judicial review under the applicable law. On a closed *ex parte* administrative record, statutory judicial review is reduced to a sham and probably to a futile and pointless formality in most cases. Further frustrating prompt and meaningful judicial review, the IFCCA seems internally inconsistent on the matter of judicial review—providing on one hand in

Section 20(d), 430 ILCS 66/20(d) that "[a]ll Board decisions and voting records shall be kept confidential and all materials considered by the Board shall be exempt from inspection except upon order of court" and adopting, on the other hand, 430 ILSC 66/87, the Illinois Administrative Review Law, which expressly requires that the entire administrative record be filed on review as the administrative defendant's *answer*. 735 ILCS 5/3-108(a)(with exceptions not relevant here, "the administrative agency shall file an answer which shall consist of the original or a certified copy of the entire record of proceedings under review, including such evidence as may have been heard by it and the findings and decisions made by it"). Even if all of the other procedural defects asserted in this count—all grossly offensive to fundamental fairness in the exercise of a fundamental right—were of no consequence, the procedural squeeze play between denying Plaintiff Bolton any opportunity to make an administrative record prior to denial and limiting judicial review of that denial to the administrative record has fatally denied Plaintiff Bolton his liberty without the process which is constitutionally due him. Thus, the IFCCA provides that neither facts nor reason shall ever stand in the way of a denial. A denial and the allegations underlying it become hermetically sealed under the provisions of this Act, impervious against any view of reality except that presented by bureaucratic investigation or law enforcement objection in a matter in which the exercise of an individual fundamental right is in issue. There is no room in the Act for any mistake in the process to be corrected. Such a limitation against truth and reason in a grave matter, especially in such a secret Star Chamber like proceeding, cannot stand consistent with our Constitution. The United States Constitution requires more. Notice and a meaningful. opportunity to be heard are the most fundamental requirements of due process, and every applicant is entitled to make his case at some time in some way before a neutral and detached decision-maker, applying a reasonably clear standard, with the power to grant his application. By the

protocols and procedures here at bar, and from their architecture, pointedly deferring from the procedural rights granted to applicants for a FOID Card, the Illinois General Assembly demonstrates a clear purpose to deny due process of law to the Plaintiff and all others in his position.

20.    While the IFCCA generally contains time limits for the processing of an application (from 90 to 120 days, depending on whether fingerprints or digital access to them is provided to the Department, and for an additional 30 to 60 should a timely law enforcement objection to an application be filed), it permits an unconstrained period which extends without limit the period of time during which an applicant, such as the Plaintiff, may be deprived of some of his Second Amendment rights. While a disappointed applicant must invoke the sole state-law remedy for a final administrative license denial within 35 days of that denial, the Illinois Administrative Review Law thereafter permits the court considering the matter to exercise any of the prerogatives of courts in extending the time required for the filing of papers or the conduct of any hearing, and certainly to delay its determination, without external limit or control. That the enacted scheme seems to require the aggrieved applicant to seek and obtain a special order of court in order merely to permit or require the ICCLRB and Department to appropriately answer with a record of the administrative proceedings to be reviewed further impermissibly both delays and complicates judicial review without valid purpose and offends both Plaintiff Bolton's Second Amendment liberties and his procedural due process rights under the Fourteenth Amendment. The legal maxim that "justice delayed is justice denied" has special, acute force and meaning when the individual liberty interest at stake is the very right to defend self and others against serious criminal aggression with sufficient lethal means to repel the assault. For this reason, too, the licensing provisions of the IFCCA deprive Plaintiff Bolton of his fundamental Second Amendment rights in violation of the Due Process Clause of the Fourteenth Amendment.

21.     Defendants Bryant, Acosta, Cavanaugh, Chesley, Diwik, Murphy, Wright, Grau, and Trame are persons within the meaning of Section 1983 of Title 42 of the United States Code, and each has acted and will act, at all times and in all matters material, under the color of the law of the State of Illinois. Similarly, the actions of each of the said Defendants concerning the Plaintiff's application for a license under the IFCCA amount to state or governmental action for the purposes of the Second and Fourteenth Amendments to the United States Constitution.

22.     Defendants Bryant, Acosta, Cavanaugh, Chesley, Diwik, Murphy, Wright, Grau, and Trame, and each of them, variously prevented or refused the issuance of a license under the IFCCA to Plaintiff Bolton on the basis of the actions taken by the ICCLRB on Plaintiff Bolton's application for such a license. Thus they have and will deprive Plaintiff Bolton of some of his Second Amendment liberties because of their denial of his procedural due process rights in connection with licensing under the IFCCA. A genuine dispute thus exists between the Plaintiff and the aforementioned Defendants concerning Plaintiff Bolton's right to such a license and concerning, in particular, the scope of hearing which the Defendants are constitutionally required to afford to Plaintiff Bolton before denying him a license under the IFCCA.

23.     Unless restrained by this Court, each of the aforementioned Defendants will continue to deprive Plaintiff Bolton of some of his Second Amendment liberties because of their denial of his procedural due process rights in connection with licensing under the IFCCA. Their denial of his application for a license under the IFCCA limits his Second Amendment rights in ways which threaten his life. Against this interference with his constitutional rights, Plaintiff Bolton has no adequate remedy at law, and he would suffer irreparable harm should his constitutional right to keep and bear arms be denied or limited in the future on the basis of a license ap-

plication review which has denied to him the procedural rights secured to him by the Fourteenth Amendment to the United State Constitution.

24.     For all of the reasons enumerated in paragraphs 16 through 23 of this count, the licensing provisions of the IFCCA are unconstitutional because they fail to afford to Plaintiff Bolton, and other applicants for a license under the IFCCA, the process which is due to them under the Fourteenth Amendment to the United States Constitution. The determination that Plaintiff Bolton poses a danger to himself or others or that he is a threat to public safety requires, at the very least, that he be afforded a) timely notice of any law enforcement objection (and its nature precisely enough to identify and refute) and the alleged factual basis therefor, b) an opportunity to be heard with respect to any factual disputes and to make a record concerning any such objections for the purposes of convincing the tribunal and of subsequent judicial review, c) an opportunity to challenge, on the record, the competence or neutrality of the personnel making decisions under a proper standard, d) a definite and reasonably limited time period during which his right to carry a weapon under the IFCCA is finally decided under Illinois law, and e) a clear and unambiguous standard by which objections to his right to a license under the IFCCA must be determined. The Defendants Bryant, Acosta, Cavanaugh, Chesley, Diwik, Murphy, Wright, Grau, and Trame denied Plaintiff Bolton all of these procedural protections. As a result they unconstitutionally denied him the license for which he applied under the IFCCA, and this Court should direct that they promptly issue the same to him or, in the alternative, award to him such other and further relief as this Court may deem just and proper. A denial of the right to bear arms constitutes irreparable harm. *See Ezell v. City of Chicago*, 651 F.3d 684, 699 (7th Cir. 2011).

WHEREFORE the Plaintiff, Donald Bolton, respectfully requests that this Court award to him and against the Defendants Robinzina Bryant, Sergio Acosta, James Cavanaugh, Patrick John

Chesley, John Diwik, G. Patrick Murphy, Virginia Wright, Hiram Grau, and Jessica Trame the following:

A.      If necessary and on proper motion or application, preliminary injunctive relief enjoining and restraining each of the foregoing Defendants, and their respective agents, employees, successors, attorneys, and others acting in concert with them or under their control or direction from interfering, directly or indirectly, with Plaintiff Bolton's rights to carry a loaded or unloaded handgun, fully or mostly concealed, on or about his person outside of his own residence or fixed place of business or to keep or carry a loaded or unloaded concealed handgun on or about his person within a vehicle and further enjoining and restraining the same from otherwise acting against Plaintiff Bolton on the ground that he lacks a license under the Illinois Firearm Concealed Carry Act;

B.      Permanent injunctive relief enjoining and restraining each of the foregoing Defendants, and their respective agents, employees, successors, attorneys, and others acting in concert with them or under their control or direction from interfering, directly or indirectly, with Plaintiff Bolton's rights to carry a loaded or unloaded handgun, fully or mostly concealed, on or about his person outside of his own residence or fixed place of business or to keep or carry a loaded or unloaded concealed handgun on or about his person within a vehicle and further enjoining and restraining the same from otherwise acting against Plaintiff Bolton on the ground that he lacks a license under the Illinois Firearm Concealed Carry Act or, in the alternative, permanent injunctive relief directing Defendant Grau to issue a license under the Illinois Firearm Concealed Carry Act to Plaintiff Bolton and restraining him from refusing to so issue said license upon Plaintiff Bolton's demand;

C.    A declaratory judgment establishing that the Illinois Firearm Concealed Carry Act is unconstitutional on its face and as applied to Plaintiff Bolton and further establishing that the process afforded to Plaintiff Bolton by the aforementioned Defendants denied the Plaintiff's constitutional due process rights and that Plaintiff Bolton is, for all intents and purposes, entitled to act as if fully and properly licensed under the Illinois Firearm Concealed Carry Act;

D.    His reasonable attorneys' fees and the costs of this action as permitted by Section 1988 of Title 42 of the United States Code; and

E.    Such other and further relief as this Court may deem just and proper.

### Count II—Prior Restraint

25.    The Plaintiff reasserts the allegations contained in paragraphs 1 through 15 of this complaint and of paragraph 21 of count 1 as if fully restated in this count 2.

26.    The IFCCA was the response by the State of Illinois to the judgment of the United States Court of Appeals for the Seventh Circuit that the Second Amendment to the United States Constitution, applying to Illinois public officials through the Fourteenth Amendment thereto, protects individuals in carrying handguns outside of their homes. Yet the licensing provisions of the IFCCA purport to require prior government permission before a law-abiding citizen, such as Plaintiff Bolton, may carry a loaded or unloaded handgun, fully or mostly concealed, on or about his person or keep or carry a loaded or unloaded concealed handgun on or about his person within a vehicle. Especially in light of the history and broad purpose of the right of the people to keep and bear arms, as protected by the Second Amendment, the idea that such fundamental rights may be conditional upon a blanket requirement requiring prior government permission, affecting all of the law-abiding citizens of Illinois who desire to exercise the right, and granted or withheld

on a case-by-case basis, effectively abrogates those rights. Thus government may not specifically license the right to keep and bear arms outside of the home; or, in the alternative, any such licensing scheme must be narrowly tailored to serve a compelling government interest where no less restrictive alternate means will suffice: none of which is the case with the licensing scheme challenged here. To the extent that IFCCA conditions concealed-carry Second Amendment rights on criteria no more demanding than those required for a FOID Card, the licensing requirements challenged here are redundant and pointless (without conceding that the FOID requirements are constitutional). Alternatively, to the extent that IFFCA requires stricter conditions than the FOID Act, the law enforcement-objection-and-review process is not justified by any compelling government interest. Alternatively, the objection-and-review process in issue here is not justified by any compelling government interest. The licensing provisions of the IFCCA cannot stand. Laws, such as the licensing provisions of the IFCCA, which purport to require individual licensure, or the procedures more precisely challenged in this complaint, in advance of the exercise of Second Amendment rights are thus unconstitutional and unenforceable, or are at least presumptively so.

27. The IFCCA purports to require a license in advance of an individual's exercise of core Second Amendment rights. Laws which condition the exercise of fundamental constitutional rights upon prior government permission pose particularly egregious constitutional problems when they vest unfettered discretion in licensors who consider individual license applications on a case-by-case basis or when they require unnecessary and burdensome conditions before a license application will even be considered.

a. Unfettered discretion may result from vague and ambiguous licensing standards as well from licensing procedures which leave the licensor free to determine, *inter alia*, when and whether to afford the applicant notice and an opportunity to be heard regarding any relevant

objections or concerns. Excessive substantive administrative discretion permits license denials which, even when made on the basis of some administrative record, may provide an insufficient basis for meaningful judicial review. *Cf. City of Lakewood v. Plain Dealer Publishing Co.*, 486 U.S. 750 (1988). Such discretion thus effectively permits the licensor to accomplish by a license denial an interference with protected constitutional rights which the government could not accomplish directly. When the licensor's procedural discretion is unfettered, the licensor may effectively accomplish by inaction precisely what would be a constitutionally impermissible result of the licensor's action. *Cf. Freedman v. State of Maryland*, 380 U.S. 51(1965). Under the licensing provisions of the IFCCA, the public officials reviewing individual license applications and the public officials who may originate and press objections to particular license applications have unfettered discretion to decide whether, when, and to what extent to afford the applicant notice of any law enforcement objection to an application. In addition, they have unfettered discretion to decide what evidence, in addition to that which the objector decides to present, to consider and what potential evidence to ignore. Moreover, they have unfettered discretion to reach conclusions on the basis of technical information (such as medical reports, which are seldom self-explanatory) without consulting outside experts and without affording the applicant an opportunity to offer such expertise. Finally, at least in the absence of formal elaboration of the controlling statutory standard by administrative rule or authoritative judicial construction, they have unfettered discretion to decide when an individual applicant is ineligible for a license under the IFCCA.

b. The licensing provisions of the IFCCA permit licensors to take too long—150 days in case of a timely law enforcement objection—to act on a license application because individually targeted threats of serious criminal aggression—against which law-abiding citizens, such as Plaintiff Bolton, are constitutionally entitled to arm themselves—may arise unexpectedly

and much more rapidly. The life-threatening conduct of shadowy figures committing street crimes is beyond the power of any State to eliminate or of any court to enjoin because they appear, quite literally, like thieves in the night. Plaintiff Bolton and others like him are required, under the protocol at bar to endure the risks they present, unarmed, during a lengthy and temporally unconstrained time. Only law-abiding and law-respecting citizens, such as the Plaintiff, are disarmed by action of the State for lengthy periods and thereby rendered helpless against armed criminals by this law. Only after this impermissibly long period does an applicant's right to any kind of judicial review—meaningful or otherwise—ripen; and during the subsequent indefinite review period, an applicant remains unconstitutionally restrained in the exercise of his Second Amendment self-defense rights outside of his or her home or fixed place of business.

c.     Under Section 30(b)(3) of the IFCCA, 430 ILCS 66/30(b)(3), license applicants are required to waive all privacy rights they would otherwise have to sensitive records such as medical reports, yet the Act and its associated administrative regulations, 20 Ill. Admin. Code Part 1231, altogether fail to assure applicants of fairness or accuracy in the consideration and review of such information as may be suggested by those records. The IFCCA so loosely fetters the licensors' discretion and conduct that it invites probing, improperly invasive, and altogether immaterial questioning of the applicants: the licensing procedure imposed upon all applicants expressly requires them to provide sensitive but entirely arbitrary and irrelevant information such as whether the applicant holds a medical marijuana patient registry card.

d.     The licensing provisions of the IFCCA require of each individual applicant a fee in an amount which, on information and belief, is not strictly limited to the marginal costs of processing individual license applications and which requires applicants to bear the ICCLRB's and the Department's costs of adjudicating unfounded or even frivolous objections to license applica-

tions. The established fee for resident applicants, $150.00, is hardly nominal, and it conditions the exercise of fundamental constitutional rights upon the advance payment of an impermissible tax. Indeed, Section 60(b) of the IFCCA, 430 ILCS 66/60(b), expressly provides that license application fess must be applied to fund other programs than the licensing system; Section 60(c), 430 ILCS 66/60(c), provides for an increased fee for non-resident applicants without regard to any increased cost in reviewing their applications; and Section 60(d), 430 ILCS 66/60(d), requires a substantial fee for a replacement license card which is unreasonable in relation to the cost of accurately replacing a license certificate or card.

28.     The IFCCA expressly bars consideration of an applicant's exercise of the right to defend himself with effective lethal force against aggressive criminal assault unless the applicant first grants his or her whole and entire consent to the release of any and all medical, psychological, and psychiatric information concerning him- or herself to governmental proctology, amounting to the baring of his or her most secret and intimate matters to the state and a waiver of all rights to confidentiality concerning the same disclosures and waivers. In order to establish bare eligibility for a license under the IFCCA, it is a necessary precondition that the applicant not be a felon, have never been the object of any domestic order of protection at any time in the past, be under criminal charges of any nature at the time, and have been in no serious trouble of any nature within the past five years. But this is not enough for Illinois lawmakers. The Board may consider whatever it considers to be "evidence" bearing on the subject, no matter how remote in time or how tenuously connected to the issues before it, or even whether it is related to the criminal or domestic relations law, at all, so long as it comes from one of the designated sources. The Board's inquisition is effectively so unconstrained as to leave the victims of its decisions, including this Plaintiff, scratching their heads, unable to determine how or why the Board has deter-

mined them to be dangerous. It is our contention that the procedures at bar sweep much too far. This law reflects their Orwellian belief that hyper-scrutiny of the most intimate secrets of law-abiding applicants, when set before a state Board which includes three former federal investigative law enforcement agents, two former United States Justice Department attorneys, and a former federal judge, acting without a sufficiently clear and concrete standard of determining dangerousness, will somehow protect the Second Amendment rights of citizens to protect themselves with handguns and fairly balance that right with the public safety. It is our contention that *1984* and the constitutionally-protected exercise of fundamental rights are not consistent and that the challenged Illinois scheme goes too far and is without purpose in the wholesale deprivation of Second Amendment rights in the IFCCA.

29.     Defendants Bryant, Acosta, Cavanaugh, Chesley, Diwik, Murphy, Wright, Grau, and Trame, and each of them, variously objected to, prevented, or refused the issuance of a license under the IFCCA to Plaintiff Bolton on the basis of the actions taken by the ICCLRB on Plaintiff Bolton's application for such a license. Thus they have and will impose an unconstitutional prior restraint upon Plaintiff Bolton's exercise of some of his Second Amendment rights. A genuine dispute thus exists between the Plaintiff and the aforementioned Defendants concerning Plaintiff Bolton's right to such a license and concerning, in particular, the scope of hearing which the Defendants are constitutionally required to afford to Plaintiff Bolton before denying him a license under the IFCCA.

30.     Unless restrained by this Court, each of the aforementioned Defendants will continue to  impose an unconstitutional prior restraint upon Plaintiff Bolton's exercise of some of the rights secured to him by the Second Amendment to the United States Constitution. Against this interference with his constitutional rights, Plaintiff Bolton has no adequate remedy at law, and he

would suffer irreparable harm should his constitutional right to keep and bear arms be denied or limited in the future on the basis of a license scheme which imposes an unconstitutional prior restraint upon rights secured by the Second Amendment to the United State Constitution.

31.     For all of the reasons enumerated in paragraphs 25 through 30 of this count and in count 1, the licensing provisions of the IFCCA impose an unconstitutional prior restraint upon the exercise, by law-abiding citizens such as Plaintiff Bolton, of individual rights secured to them by the Second Amendment to the United States Constitution, which rights apply against the foregoing Defendants through the Fourteenth Amendment thereto. The impermissible discretion afforded to government officials under the licensing provisions of the IFCCA imposes a chilling effect on the exercise of said rights; and every application of the licensing provisions poses that danger. For this reason, the licensing provisions of the IFCCA are unconstitutional on their face, as are other licensing schemes which purport to require advance government permission for the exercise of individual constitutional rights and which afford the licensor insufficiently fettered substantive or procedural discretion. Plaintiff Bolton is thus entitled, without a license under the IFCCA, to exercise those of his Second Amendment rights which the IFCCA purports to condition upon a license from the State of Illinois. In the alternative, Plaintiff Bolton is now presently entitled to the license for which he applied under the IFCCA.

WHEREFORE the Plaintiff, Donald Bolton, respectfully requests that this Court award to him and against the Defendants Robinzina Bryant, Sergio Acosta, James Cavanaugh, Patrick John Chesley, John Diwik, G. Patrick Murphy, Virginia Wright, Hiram Grau, and Jessica Trame the following:

A.     If necessary and on proper motion or application, preliminary injunctive relief enjoining and restraining each of the foregoing Defendants, and their respective agents, employees,

successors, attorneys, and others acting in concert with them or under their control or di-rection from interfering, directly or indirectly, with Plaintiff Bolton's rights to carry a loaded or unloaded handgun, fully or mostly concealed, on or about his person outside of his own residence or fixed place of business or to keep or carry a loaded or unloaded con-cealed handgun on or about his person within a vehicle and further enjoining and restrain-ing the same from otherwise acting against Plaintiff Bolton on the ground that he lacks a license under the Illinois Firearm Concealed Carry Act;

B.  Permanent injunctive relief enjoining and restraining each of the foregoing Defendants, and their respective agents, employees, successors, attorneys, and others acting in concert with them or under their control or direction from interfering, directly or indirectly, with Plaintiff Bolton's rights to carry a loaded or unloaded handgun, fully or mostly conceal-ed, on or about his person outside of his own residence or fixed place of business or to keep or carry a loaded or unloaded concealed handgun on or about his person within a ve-hicle and further enjoining and restraining the same from otherwise acting against Plain-tiff Bolton on the ground that he lacks a license under the Illinois Firearm Concealed Car-ry Act or, in the alternative, permanent injunctive relief directing Defendant Grau to issue a license under the Illinois Firearm Concealed Carry Act to Plaintiff Bolton and restrain-ing him from refusing to so issue said license upon Plaintiff Bolton's demand;

C.  A declaratory judgment establishing that Illinois Firearm Concealed Carry Act imposes an unconstitutional prior restraint upon the exercise of Second Amendment rights insofar as it purports to require a license before a law-abiding citizen may carry a loaded or un-loaded handgun, fully or mostly concealed, on or about his person outside of his own res-idence or fixed place of business or to keep or carry a loaded or unloaded concealed

handgun on or about his person within a vehicle or, in the alternative, a declaratory judgment establishing that the Illinois Firearm Concealed Carry Act imposes an unconstitutional prior restraint upon the exercise of Second Amendment rights insofar as it permits the aforementioned Defendants, or others similarly situated, to deny a license under that Act without affording the applicant notice of any objection and an opportunity to be heard and to make an effective record regarding any such objection and the facts underlying the same and further establishing that the process afforded to Plaintiff Bolton by the aforementioned Defendants denied the Plaintiff's Second Amendment rights and that Plaintiff Bolton is, for all intents and purposes, entitled to act as if fully and properly licensed under the Illinois Firearm Concealed Carry Act;

D.    His reasonable attorneys' fees and the costs of this action as permitted by Section 1988 of Title 42 of the United States Code; and

E.    Such other and further relief as this Court may deem just and proper.

 

 

Respectfully submitted,
DONALD BOLTON

 

s/ J. D. Obenberger
By:_____
J.D. Obenberger, Esq.
Counsel for Plaintiff

Of Counsel:

J. D. Obenberger and Associates
115 South LaSalle Street
Suite 2600
Chicago, Illinois  60603           s/ Reed Lee
and:_____
Reed Lee. Esq.
Co-counsel for Plaintiff

(312) 558-6427